# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00276-CR

**Timothy Owen Bailey, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
### NO. D-1-DC-08-205742, HONORABLE FRED A. MOORE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Timothy Owen Bailey was arrested and charged with driving while intoxicated (DWI), enhanced to a second-degree felony. *See* Tex. Penal Code Ann. § 12.42 (West Supp. 2009), § 49.04 (West 2003), § 49.09(b)(2) (West Supp. 2009). A jury found Bailey guilty of the offense and assessed punishment at fifteen years' imprisonment. We affirm the judgment of conviction.

## BACKGROUND

Austin police officer Sophia Loera testified at trial that on the evening of September 24, 2008, she observed a vehicle screeching its tires, changing lanes in an unsafe manner, failing to signal before making lane changes, and driving in two lanes at one time.[1] Loera initiated

---

[1] Loera testified that with the exception of the screeching of tires, each of these actions constituted a traffic violation.

a traffic stop and approached the vehicle, where she discovered Bailey, the driver of the vehicle, with his shirt inside out and his pants unzipped. Loera testified that she detected a strong smell of alcoholic beverages coming from the vehicle and that Bailey seemed confused by her questions, answering "home" both times when asked where he was coming from and where he was going. Bailey denied having consumed any alcoholic beverages that night, but refused to submit to a breath test. Loera then performed a number of field sobriety tests. According to Loera, Bailey exhibited six out of six clues for intoxication on the horizontal-gaze-nystagmus test, six out of eight clues on the walk-and-turn test, and three out of four clues on the one-leg-stand test. Based on his failure of field sobriety tests, Loera arrested Bailey for DWI.

Before trial, Bailey filed a number of pro se motions, including two motions to recuse. Bailey was represented by appointed counsel at the time these motions were filed. The day before trial, Bailey filed a motion to waive appointed counsel, which the trial court considered during a pretrial hearing. The trial court granted the motion and allowed Bailey to represent himself at trial, with appointed counsel remaining to handle voir dire. Both the pretrial hearing and the trial itself were conducted by a visiting judge, rather than the judge Bailey sought to recuse. During the pretrial hearing, the following exchange occurred:

Bailey: I filed a motion to recuse the Trial Court, and the Court has failed to refer this motion for another presiding judge to hear the motion. . . . I mean, recusal is a mandatory duty, and this Court has just thrown it aside.

Court: You've got a new [j]udge, me.

. . . .

2

Court:       I will be glad to rule on all your pro se motions.

Bailey:      Okay.

Court:       They're all denied.

The trial court then granted Bailey's motion to waive appointed counsel and addressed his concerns related to the enhancement provision applicable to his case, the issue upon which all of the pro se motions had been predicated.

Bailey represented himself during both the guilt/innocence phase and the punishment phase of trial. The jury ultimately found him guilty and assessed punishment at fifteen years' imprisonment. This appeal followed.

**DISCUSSION**

Bailey's points of error on appeal can be summarized as four distinct issues. He argues (1) that the trial court erred in failing to refer his motions to recuse to the presiding judge for assignment, (2) that the trial court violated his due-process rights by refusing to rule on his pro se pretrial motions, (3) that the trial court erred in allowing certain prior DWI convictions to be used for enhancement purposes, and (4) that he received ineffective assistance of counsel.

*Recusal*

In connection with his recusal motions, Bailey argues that the trial court erred by refusing to comply with the requirement of Texas Rule of Civil Procedure 18a. Rule 18a, which applies to criminal cases, dictates that when a motion to recuse has been filed, "the judge shall either recuse himself or request the presiding judge of the administrative judicial district to assign a judge

3

to hear such motion." Tex. R. Civ. P. 18a(c); *see also De Leon v. Aguilar*, 127 S.W.3d 1, 5 (Tex. Crim. App. 2004) (Rule 18a applies to criminal cases). It is undisputed that the trial court did not comply with this requirement. However, Rule 18a also requires a motion to recuse to be timely, verified, and to state with particularity the grounds for recusal. *See* Tex. R. Civ. P. 18a(a). These procedural requisites for recusal are mandatory, so that a party who fails to comply waives his right to complain of a judge's failure to either recuse himself or refer the motion to the presiding judge. *See Barron v. State of Tex. Attorney Gen.*, 108 S.W.3d 379, 382 (Tex. App.—Tyler 2003, no pet.).

The record reflects that Bailey's motions to recuse were not verified as required by Rule 18a(a). Because Bailey was an inmate at the time his motions were filed, he was entitled to use an unsworn declaration under chapter 132 of the civil practice and remedies code in lieu of a verification. *See* Tex. Civ. Prac. & Rem. Code Ann. § 132.001(a) (West Supp. 2009). The court of criminal appeals has held that in allowing inmates to use unsworn declarations, "[t]he only phrase that the Legislature actually mandates should be included in such declarations is 'under penalty of perjury.'" *Bahm v. State*, 219 S.W.3d 391, 394 (Tex. Crim. App. 2007); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 132.002(2) (West 2005) (unsworn declaration must be "subscribed by the person making the declaration as true under penalty of perjury"). While Bailey's motions to recuse did include language stating, "I do swear that all contained herein is true and correct," they do not include the phrase "under penalty of perjury." As such, they were not verified as required by Rule 18a(a), even under the lower standard applicable to inmates. *See id.*

Because Bailey's motions to recuse did not comply with the requirements of Rule 18a(a), the trial court's obligations under Rule 18a(c) were never triggered. *See Barron*,

108 S.W.3d at 383 ("[T]he provisions of Rule 18a obligating a trial judge to either recuse himself or refer the motion to the presiding judge of the administrative judicial district never come into play unless and until a formal timely, written and verified motion to recuse is filed."). Furthermore, Bailey's motion to recuse became moot when his trial was conducted by a visiting judge, rather than the judge Bailey sought to recuse. We overrule this issue on appeal.

*Bailey's Pretrial Motions*

Bailey argues that his due-process rights were violated when the trial court refused to rule on his pretrial pro se motions. First, Bailey was represented by appointed counsel at the time his pro se motions were filed, and therefore he was not entitled to a ruling from the trial court. *See Thomas v. State*, 286 S.W.3d 109, 113 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (stating that trial court need not consider pro se motions filed while defendant is represented by counsel). Second, the record reflects that the trial court did rule on Bailey's pro se motions at the pretrial hearing by granting his motion to waive the assistance of counsel and denying the remaining motions. As a result, Bailey's due-process rights could not have been violated by a failure to rule on his motions. To the extent Bailey argues that his due-process rights were violated by the trial court's failure to hold a hearing on his motions, he was not entitled to such a hearing while he was represented by counsel. *See id.* Once Bailey's motion to waive counsel was granted at the pretrial hearing, the trial court permitted Bailey the opportunity to argue his position on the applicable enhancement provisions, the issue giving rise to all of his pro se motions. As a result, we hold that Bailey's due-process rights were not violated by the actions of the trial court, and overrule this issue on appeal.

*Enhancement*

Bailey's primary complaint, both in the trial court and on appeal, has been that the trial court improperly applied statutory enhancement provisions to his offense. In addressing these arguments, it is important to note that Bailey's prior convictions affected the current prosecution in two different ways. First, he had two prior misdemeanor DWI convictions, one from 1991 and one from 2003, that were alleged to elevate the current DWI to a third-degree felony under penal code section 49.04, the enhancement statute specific to DWIs. *See* Tex. Penal Code Ann. § 49.09(b)(2) (DWI is elevated to third-degree felony if person has two prior DWI convictions). Second, Bailey had two prior felony convictions, one felony DWI from 1991 and one conviction for delivery of a simulated controlled substance from 1991, that were alleged to enhance the punishment level from third-degree felony to second-degree felony under penal code section 12.42(a)(3), a general enhancement provision. Tex. Penal Code Ann. § 12.42(a)(3) (prior felony conviction may be used to enhance third-degree felony to second-degree felony).

Bailey argues on appeal that the trial court erred in allowing his 1991 felony DWI conviction to be used for enhancement purposes under section 12.42 in light of the general rule that when a special enhancement provision applies to the primary offense, prior convictions that could be used under the special provision cannot be used to enhance the offense under a general enhancement provision. *See Phifer v. State*, 787 S.W.2d 395, 396 (Tex. Crim. App. 1990). In other words, Bailey argues that because there is a special enhancement provision for DWI offenses in section 49.09, his prior felony DWI conviction cannot be used for enhancement under section 12.42, a general enhancement provision. *Compare* Tex. Penal Code Ann. § 49.09 (special

6

DWI enhancement provision) *with id.* § 12.42 (general enhancement provision). However, subsection 49.09(g) of the DWI enhancement provision expressly states, "A conviction may be used for purposes of enhancement under this section *or* enhancement under [the general enhancement provisions in] Subchapter D, Chapter 12, but not under both this section and Subchapter D." *Id.* § 49.09(g) (emphasis added). It is undisputed that Bailey's misdemeanor DWIs were alleged for enhancement purposes under section 49.09, while his felony DWI was alleged for enhancement purposes under section 12.42, so that none of Bailey's previous DWI convictions were alleged for enhancement under both sections. Thus, under the plain language of section 49.09(g), Bailey's felony DWI was not improperly used for enhancement.

Bailey argues, however, that section 49.09(g) does not apply to this case because it was not enacted until after his 1991 felony DWI conviction. *See* Act of May 24, 1995, 74th Leg., R.S., ch. 318, § 21, 1995 Tex. Gen. Laws 2734, 2743. We disagree. With respect to the enhancement of DWIs, the applicable law is the law in effect at the time of the primary offense, rather than the law in effect at the time of any prior conviction being used for enhancement. *See Tietz v. State*, 256 S.W.3d 377, 379 (Tex. App.—San Antonio 2008, pet. ref'd) ("[A]n accused is subject to the enhancement provisions in effect at the time the primary offense was committed."). Here, the primary offense of DWI occurred in September 2008, at which time the current version of section 49.09, which includes subsection (g), was in effect. As a result, the trial court did not err in allowing the felony DWI to be used for enhancement under the general enhancement provision in section 12.42. *See Crooks v. State*, No. 07-07-0452-CR, 2008 Tex. App. LEXIS 9571, at *4 n.2 (Tex. App.—Amarillo Dec. 22, 2008, pet. ref'd) (mem. op., not designated for publication) ("[I]f the

7

primary offense for which appellant was charged fell within the ambit of section 49.09, section 49.09(g) would still authorize the use of a pre-1995 felony DWI conviction to enhance punishment under section 12.42, provided that the conviction was not also used as a jurisdictional enhancement under section 49.09.").

Bailey also argues that the trial court erred in allowing his 1991 misdemeanor DWI to be used for enhancement purposes because at the time that offense was committed, DWI enhancements were governed by former article 6701*l*-1 of the revised civil statutes, which included the following language in subsection (i):

> (i) A conviction may not be used for the purpose of enhancement under Subsection (d) or (e) of this article if:
>
> > (1) the conviction was a final conviction under the provisions of Subsections (g) and (h) of this article and was for an offense committed more than 10 years before the offense for which the person is being tried was committed; and
> >
> > (2) the person has not been convicted of [certain alcohol-related offenses], committed within 10 years immediately preceding the date on which the offense for which the person is being tried was committed.

Act of May 27, 1983, 68th Leg., R.S., ch. 303, § 3, 1983 Tex. Gen. Laws 1568, 1576-77, *repealed by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.15, 1993 Tex. Gen. Laws 3586, 3704.

According to Bailey, because this "ten-year rule" was in effect at the time of his 1991 DWI, that offense cannot be used for enhancement purposes in the present case. However, as previously noted, the applicable law for enhancement purposes is the law in effect at the time the primary offense was committed, rather than the offenses used for enhancements. *See Tietz*,

256 S.W.3d at 379; *see also State v. Karasek*, No. 14-09-00834-CR, 2010 Tex. App. LEXIS 2085, at *6 (Tex. App.—Houston [14th Dist.] Mar. 25, 2010, pet. filed) (mem. op., not designated for publication) (holding that use of prior DWI convictions for enhancement does not trigger savings clause that would require application of former law).  After amending the ten-year rule a number of times, the legislature repealed it completely in 2005, removing any time restrictions on the past offenses that could be used to enhance a DWI under section 49.09.  *See* Act of May 25, 2005, 79th Leg., R.S., ch. 996, § 3, 2005 Tex. Gen. Laws 3363, 3364.  Thus, because the primary offense in this case occurred in 2008, the ten-year rule does not apply.  We note also that even if the ten-year rule as it existed in 1991 did apply to this case, Bailey's 1991 DWI could have been used for enhancement purposes because he committed an intervening offense of misdemeanor DWI in 2003, less than ten years before the primary offense.[2]

Bailey also makes an argument that section 49.09 limits the convictions that can be used for enhancement purposes to those that became final on or after September 1, 1994.  He cites to subsection (d) of that provision, which states, "For purposes of this section, a conviction for an offense under [the statutes governing alcohol-related offenses] that occurs on or after

---

[2] Bailey cites *Uriega v. State*, 136 S.W.3d 258 (Tex. Crim. App. 2004), for the proposition that in applying the ten-year rule, a court must "look forward" ten years from the date of the prior offense, rather than "looking back" ten years from the date of the primary offense.  However, the court in *Uriega* was applying the ten-year rule as amended in 2001.  *See id.* at 260-61.  If we were to apply the ten-year rule in effect at the time of Bailey's 1991 conviction, as he urges us to do, we would look back from the date of the primary offense.  *See id.* at 260 ("Under the pre-2001 version of § 49.09(e), the proper approach was to "look back" ten years from the date of the primary DWI offense to determine whether an intervening DWI conviction had occurred since the remote DWI conviction.").  In any event, as previously discussed, the ten-year rule was repealed in 2005, well before the primary offense occurred in this case, and therefore is not applicable.

September 1, 1994, is a final conviction, whether the sentence for the conviction is imposed or probated." Tex. Penal Code Ann. § 49.09(d). Bailey appears to interpret this language to mean that convictions that occurred prior to September 1, 1994, are not considered "final convictions" for enhancement purposes and therefore cannot be used for enhancement.[3]

The court of criminal appeals addressed a similar argument in *Ex parte Serrato*, 3 S.W.3d 41 (Tex. Crim. App. 1999). In that case, the habeas applicant cited subsection 49.09(d) and argued that because his prior convictions occurred prior to September 1, 1994, and resulted in probated sentences, they were not final convictions and therefore could not be used for enhancement purposes. *Id.* at 42. The court of criminal appeals disagreed, pointing out that section 49.09 defines the offenses that could be used for enhancement purposes to include "an offense under Article 6701*l*-1, Revised Statutes, as that law existed before September 1, 1994." *Id.* at 42-43 (quoting Tex. Penal Code Ann. § 49.09(c)(1)(c)). The court went on to point out that prior to September 1, 1994, article 6701*l*-1 defined a final conviction as a conviction for an offense occurring on or after January 1, 1984, whether or not the sentence for the conviction was probated. *Id.* at 43. Based on this language, the court held:

---

[3] In a similar vein, Bailey argues that September 1, 1994 is a significant date because prior to that date, the maximum sentence for a third DWI was five years' imprisonment. *See* Act of May 27, 1983, 68th Leg., R.S., ch. 303, § 3, 1983 Tex. Gen. Laws 1568, 1576-77, *repealed by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.15, 1993 Tex. Gen. Laws 3586, 3704. According to Bailey, because his 1991 misdemeanor DWI occurred prior to September 1, 1994, the maximum sentence he can receive is five years' imprisonment. As previously discussed, the applicable law is the law in effect at the time of the primary offense, which in this case occurred in 2008. *See Tietz v. State*, 256 S.W.3d 377, 379 (Tex. App.—San Antonio 2008, pet. ref'd). As a result, the current penalty range is applicable to the current prosecution.

10

In light of the Legislature's specific intent to keep the law the same as its previous incarnation, we do not find applicant's contention to have merit. This section [49.09(d)] was enacted to state that probated convictions under the new statute are considered final convictions. And by incorporating the prior DWI statute, as that law existed before enactment of the new statute, the Legislature declared its intent to continue the status quo, which included permitting probated DWI convictions for enhancement if the offense occurred after January 1, 1984.

We hold that a probated DWI conviction which occurred after January 1, 1984, but prior to September 1, 1994, may properly be used to enhance a sentence.

*Id.* Applying that same reasoning, we hold that Bailey's conviction, which occurred after January 1, 1984, but prior to September 1, 1994, was a "final conviction" that could properly be used to enhance his sentence.[4]

Finally, Bailey asserts that any changes to the DWI enhancement statute that would permit his 1991 DWI convictions to be used for enhancement purposes, including the repeal of the ten-year rule and the enactment of subsection (g), represent unconstitutional ex post facto laws. *See* U.S. Const. art. I, § 10; Tex. Const. art. I, § 16.[5] However, courts have held that for purposes of enhancement, the use of prior convictions that could not have been used at the time they were originally committed is not a violation of the prohibition against ex post facto laws. *See*

---

[4] Bailey's sentence for the 1991 DWI was not probated. Bailey's driving records reflect that he did receive probation for a DWI in 1988, but the State did not allege this offense for purposes of enhancement. In any event, the reasoning of *Serrato* is not limited to situations in which the sentence in the prior offense was probated, but to all convictions occurring on or after January 1, 1984. *See State v. Verhoeven*, 151 S.W.3d 637, 643 (Tex. App.—Fort Worth 2004, pet. ref'd).

[5] "An ex post facto law: 1) punishes as a crime an act previously committed which was innocent when done; 2) changes the punishment and inflicts a greater punishment than the law attached to a criminal offense when committed; or 3) deprives a person charged with a crime of any defense available at the time the act was committed." *Rodriguez v. State*, 93 S.W.3d 60, 66 (Tex. Crim. App. 2002).

11

*Sepeda v. State*, 280 S.W.3d 398, 401 (Tex. App.—Amarillo 2008, pet. ref'd) (collecting cases). As the court of criminal appeals explained:

> It is well settled that a conviction which occurred prior to the enactment of a statute providing for increased punishment upon a subsequent conviction may be used for enhancement purposes under that statute, and that such usage is not unconstitutional as being an ex post facto application of the statute.

*Vasquez v. State*, 477 S.W.2d 629, 632 (Tex. Crim. App. 1972). Similarly, this Court has held that the ten-year rule "was not an explicit guarantee that those convictions could not be used in the future, but only a restriction on what prior convictions could be used to enhance a DWI offense *at that time*." *Saucedo v. State*, No. 03-06-00305-CR, 2007 Tex. App. LEXIS 4292, at *10 (Tex. App.—Austin May 30, 2007, no pet.) (mem. op., not designated for publication) (emphasis added). This same reasoning applies to any restrictions on the use of prior convictions under section 49.09, so that changes to section 49.09 that affect the availability of prior convictions for enhancement purposes in the future do not violate the constitutional prohibition on ex post facto laws.

To the extent that Bailey also characterizes the use of his prior DWI convictions for enhancement purposes as a double-jeopardy violation, this argument fails as well. While the legislature has determined that the repetition of criminal conduct justifies heavier penalties, "the statute providing for a greater penalty upon a subsequent conviction does not seek to punish the offender for the original criminal act a second time." *Vasquez*, 477 S.W.2d at 632 (citing *Graham v. West Virginia*, 224 U.S. 616, 623 (1912)). Thus, the punishment assessed "is for the new crime only." *Sepeda*, 280 S.W.3d at 401; *see also State v. Pieper*, 231 S.W.3d 9, 12 (Tex. App.—Houston

12

[14th Dist.] 2007, no pet.) (citing general principle "that enhancement statutes penalize the new criminal offense being enhanced rather than the prior offense used for enhancement"). Because the current prosecution penalizes only the new DWI offense, it does not constitute double jeopardy with respect to the prior offenses being used for enhancement.

We overrule Bailey's appellate issues related to the use of prior convictions for purposes of enhancement.

*Ineffective Assistance of Counsel*

In his final issue on appeal, Bailey argues that he received ineffective assistance of counsel, citing two specific instances of conduct by appointed counsel during voir dire. First, Bailey contends that his counsel was ineffective because, in telling the jury a personal story about his grandmother being injured by a drunk driver, he emphasized the fact that she suffered from her injuries for fifteen years. Second, Bailey argues that his counsel was ineffective because he told the jury panel during voir dire that the issue of intoxication was undisputed. Bailey also complains that counsel made certain comments prior to trial that rendered his assistance ineffective.

To prevail on a claim of ineffective assistance of counsel, a defendant must show that: (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense, resulting in an unreliable or fundamentally unfair outcome of the proceeding. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986) (adopting *Strickland* two-prong test). To establish deficient performance as a matter of law under the first prong, a defendant must show that no reasonable trial strategy could justify counsel's conduct. *See*

13

*Strickland*, 466 U.S. at 689; *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005). A defendant establishes prejudice under the second prong if he shows that a reasonable probability exists that, but for the deficient performance, the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 694; *Ex parte Cash*, 178 S.W.3d 816, 818 (Tex. Crim. App. 2005). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694.

During voir dire, appointed counsel explained to the jury panel that a personal story involving alcohol or DWI might affect someone's ability to serve on the jury. In discussing this issue, counsel stated, "Most people sort of have a story in their lives about DWI, or at least a story about alcohol. In other words, alcohol or DWI has somehow affected your life. And let me tell you my story." Counsel relayed a story involving his grandmother being hit by a drunk driver and having trouble walking for the remaining fifteen years of her life. He then asked the jury panel if anyone had a similar story that might affect their ability to be a fair and impartial juror in a DWI case.

On appeal, Bailey argues that counsel "stressed the issue of [fifteen] years," in talking about his grandmother's long-term injuries, and therefore indicated that he "knew before the trial ever started what the State would be asking as far as punishment goes in this case because he works with the State." Bailey's contention appears to be that counsel repeated the phrase "fifteen years" during his personal story because he knew that the State would ultimately ask the jury to assess punishment at fifteen years' confinement. This is an inferential leap that we cannot make. Other than Bailey's speculation, there is no indication whatsoever that defense counsel was making any connection between the fifteen-year time frame involved in his personal story and Bailey's eventual

14

sentence. Bailey does not argue that counsel was somehow suggesting to the jury that fifteen years would be an appropriate punishment, nor would we consider such an argument to be reasonable under the circumstances. Bailey's unsupported assertions related to counsel's story during voir dire are insufficient to overcome the "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Bailey also claims that his counsel acted ineffectively during voir dire by telling the jury panel that Bailey was guilty of the charged offense. In support of this assertion, Bailey quotes counsel as making the following statement to the jury panel: "I don't expect there's going to be any disputed issue on whether or not Mr. Bailey was intoxicated. But they have to prove whether or not he was driving on a public street and highway in Travis County, Texas." Our review of the record reveals that counsel did not in fact make the statement quoted above. Rather, in explaining to the jury panel what the State was required to prove, counsel stated:

> At the end of the trial, . . . the Judge is going to give you a charge, and it's like the written instruction, jury instruction. And he's going to say that the State has to prove this case, that Mr. Bailey was intoxicated—and by the way, I don't expect there's going to be any disputed issue in this case beyond whether or not he was intoxicated. But they have to prove that he was driving on a public street and highway in Travis County, Texas, while he had lost the normal use of his mental or his physical abilities by reason of the introduction of alcohol or a controlled substance or drug or some combination of those into his body. Okay?

There is a significant distinction between a statement that there is no disputed issue "on" intoxication and a statement that there is no disputed issue "beyond" intoxication. Counsel did not represent to the jury that the issue of intoxication was undisputed, but in fact represented quite the opposite—that

15

the *only* disputed issue was whether Bailey was intoxicated. As such, we cannot conclude that counsel's conduct fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 688.

Finally, Bailey argues that counsel was ineffective based on certain comments he made to Bailey prior to trial. Specifically, Bailey claims that counsel misled him about the law by telling him that the current version of penal code section 49.09(d) was a "misprint," and that the punishment range for a third DWI in 1991 was two to ten years' imprisonment. These statements, if in fact they were made, do not constitute ineffective assistance of counsel because they could not have prejudiced Bailey's defense in any way. *See id.* at 687. As previously discussed, the enhancement provisions of chapter 49.09 were properly applied to Bailey's offense, and the punishment range for a DWI in 1991 is totally irrelevant to Bailey's case.[6] Bailey also complains of certain "oppressive" comments allegedly made by counsel prior to trial, including a statement that Bailey could become a "writ writer" in prison. Again, there is no evidence that any of the complained-of comments were actually made, or if they were, how they could have prejudiced Bailey's defense, particularly when Bailey was permitted to represent himself at trial. As such, we cannot conclude that Bailey's appointed counsel was ineffective. *See id.*

In light of the foregoing, we hold that Bailey did not receive ineffective assistance of counsel. We overrule this issue on appeal.

---

[6] The trial court correctly informed Bailey at arraignment that the punishment range applicable to his offense was two to twenty years' imprisonment.

16

**CONCLUSION**

We affirm the judgment of conviction.

_____

Diane M. Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   June 18, 2010

Do Not Publish