Bobby Doyle GETTS, Appellant,

v.

The STATE of Texas.

No. PD–0093–04.

Court of Criminal Appeals of Texas.

Jan. 26, 2005.

---

4. *Brown v. State* at 231.

6. *Id.,* slip op. at 6.

**154**

Nancy Paula Perkins, Athens, for Appellant.

Matthew Paul, State's Atty., Austin, for State.

**1.** *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

### OPINION

KEASLER, J., delivered the opinion of the Court in which PRICE, WOMACK, JOHNSON, HERVEY, and HOLCOMB, JJ., joined.

Bobby Doyle Getts was charged with a DWI committed in 2002. The indictment alleged two previous DWI convictions— one in 1997 and one in 1984. We must decide whether these previous convictions were sufficient to elevate the 2002 offense to a third-degree felony. Based on the 2001 amendments to the DWI statute, we conclude that the answer is no.

### Facts and Procedural History

Getts was charged by indictment with driving while intoxicated. The indictment further alleged that prior to the commission of that offense, Getts had been convicted of DWI on April 26, 1984 and on September 11, 1997. In an enhancement paragraph, the indictment alleged that Getts had been previously convicted of felon in possession of a firearm.

Getts's lawyer filed a pretrial motion to dismiss, arguing that the indictment failed to allege a felony DWI because the 1984 prior conviction "occurred more than 10 years before the offense being charged in this case." Getts filed a *pro se* motion to quash indictment on the same grounds. The trial court held a hearing and overruled Getts's motions. Getts then pleaded guilty pursuant to a plea bargain agreement for three years and the State's abandonment of the enhancement paragraph.

Getts filed notice of appeal. His appointed counsel filed an *Anders* [1] brief, and Getts filed a *pro se* appellate brief arguing that the trial court erred in denying the pretrial motion to dismiss and that the trial court lacked jurisdiction because this was not a felony DWI. The Court of Appeals agreed.[2] It found that the 1984 con-

**2.** *Getts v. State,* 156 S.W.3d 593, 2003 WL 22456104, 2003 Tex.App. LEXIS 9237 (Tex. App.-Tyler, Oct. 29, 2003), *reh'g denied,* 2003

viction "[met] each of the requirements for remoteness" under Penal Code § 49.09(e) and therefore was unavailable for enhancement.[3] As a result, the appellate court reformed Getts's judgment to a class B misdemeanor and remanded to the trial court for sentencing.[4] The court denied the State's motion for rehearing, noting that § 49.09(e) "is unambiguous on its face."[5]

We granted the State's petition for discretionary review to decide whether the Court of Appeals correctly interpreted § 49.09(e).

### Analysis

 When discerning the meaning of a statute, we begin with its plain language.[6] Our leading case in statutory interpretation, *Boykin v. State,*[7] instructs us to first "focus our attention on the literal text of the statute in question" because "the text of the statute is the law."[8] If that language is clear and unambiguous, the plain meaning of those words is applied.[9] But if the plain language leads to absurd results that the Legislature could not possibly have intended, or if the language is ambiguous, we may consider extra-textual factors to determine the statute's meaning.[10]

Section 49.09(e) reads as follows:

Except as provided by Subsection (f), a conviction may not be used for purposes of enhancement under this section if:

(1) the conviction was a final conviction under Subsection (d);

(2) the offense for which the person is being tried was committed more than 10 years after the latest of:

(A) the date on which the judgment was entered for the previous conviction;

(B) the date on which the person was discharged from any period of community supervision on which the person was placed for the previous conviction;

(C) the date on which the person successfully completed any period of parole on which the person was released after serving a portion of the term to which the person was sentenced for the previous conviction; or

(D) the date on which the person completed serving any term for which the person was confined or imprisoned for the previous conviction; and

(3) the person has not been convicted of an offense under Section 49.04, 49.05, 49.06, 49.065, 49.07, or 49.08 or any offense related to operating a motor vehicle while intoxicated within 10 years of the latest date under Subdivision (2).

Initially, the statute states that "a conviction may not be used for purposes of enhancement under this section if...." This phrase refers to one conviction, not two. The statute does not say "two convictions may not be used for enhancement if...." Therefore, it applies to prior con-

WL 22956392, 2003 Tex.App. LEXIS 10546 (Tex.App.-Tyler, Dec. 16, 2003) (not designated for publication).

3. *Id.* at 595.

4. *Id.* at 596.

5. *Getts v. State,* 2003 WL 22956392, at *1, 2003 Tex.App. LEXIS 10546 *3 (Tex.App.-Tyler, Dec. 16, 2003) (not designated for publication).

6. *Boykin v. State,* 818 S.W.2d 782, 785 (Tex. Crim.App.1991).

7. 818 S.W.2d 782 (Tex.Crim.App.1991).

8. *Id.* at 785.

9. *Id.*

10. *Id.* at 785–86.

victions individually, not collectively. The statute provides the framework for determining if either of Getts's prior convictions is available for enhancement. We must consider one prior conviction at a time.

We will begin with Getts's 1984 prior conviction. The easiest way to understand this statute is to plug the relevant facts into it, and then read it. So every time the statute refers to "the previous conviction," we will plug in the 1984 conviction. When it refers to the current offense, we will plug in Getts's 2002 offense. We will also plug in "Getts" every time the statute refers to "the person." Now the statute reads as follows:

> The 1984 conviction may not be used for purposes of enhancement if:
>
> (1) the 1984 conviction was a final conviction under Subsection (d);
>
> (2) the 2002 offense was committed more than 10 years after the latest of:
>
>> (A) the date on which the 1984 judgment was entered;
>>
>> (B) the date on which Getts was discharged from any period of community supervision on which he was placed for the 1984 conviction;
>>
>> (C) the date on which Getts successfully completed any period of parole on which he was released after serving a portion of the term to which he was sentenced for the 1984 conviction; or
>>
>> (D) the date on which Getts completed serving any term for which he was confined or imprisoned for the 1984 conviction; and
>
> (3) Getts has not been convicted of any other offense related to operating a motor vehicle while intoxicated within 10 years of the latest date under Subdivision (2).

The next step in filling in the blanks is to determine, under subsection (2), the latest of (A), (B), (C), or (D) for the 1984 conviction. In that case, Getts was convicted of DWI on April 26, 1984. The record reflects that he served three days in jail after being convicted, apparently due to credit for time in custody awaiting trial. He did not receive community supervision or parole; instead, he discharged the sentence after three days. So the latest date under those four options is (D), the date he completed his term. That date is April 29, 1984.

Now we can read the statute as follows:

> The 1984 conviction may not be used for purposes of enhancement if:
>
> (1) the 1984 conviction was a final conviction under Subsection (d);
>
> (2) the 2002 offense was committed more than 10 years after April 29, 1984; and
>
> (3) Getts has not been convicted of any other offense related to operating a motor vehicle while intoxicated within 10 years of April 29, 1984.

We now must consider subsection (3), whether Getts was convicted of another alcohol-related offense within 10 years of April 29, 1984. The record reflects that he was convicted of DWI on September 11, 1997. That is more than 10 years from April 29, 1984. No other alcohol-related offense is in the record.

■ Under the statute, all three conditions must be met for the conviction to be unavailable for enhancement. Otherwise, the conviction is available for enhancement. In this case, all three conditions are met:

(1) The 1984 conviction is a final conviction.

(2) The 2002 offense was committed more than 10 years after April 29, 1984.

(3) Getts was not convicted of another alcohol-related offense within 10 years of April 29, 1984.

Because all three conditions are met, the 1984 conviction is unavailable for enhancement. And without that conviction, the current offense ceases to be a felony DWI. There is no need to apply the statute to the 1997 conviction because both prior convictions are needed to elevate this offense to a felony, and the 1984 conviction is unavailable.

### No Absurd Result

The State concedes that this is what the literal text of the statute provides. It argues, however, that this creates an absurd result. The State points out that, under this interpretation, a 100–year–old conviction could be used if the defendant also had a 90–year–old conviction, but a 12–year–old conviction cannot be used if the other conviction was just 1–year–old.

The State's assessment is correct, but we disagree that this result is absurd. There is nothing absurd about a statutory interpretation which results in certain prior convictions being available for enhancement and others not being available. Indeed, our interpretation of the statute is not all that different from the State's. The appendix is useful in comparing the two interpretations. It takes each possible set of facts and demonstrates whether the convictions would be available for enhancement under the State's interpretation of the statute and under our interpretation. For simplicity's sake, the latest date of the four options under § 49.09(e)(2) is referred to simply as the "discharge date."

As is evident from the appendix, the State differs from us in only two situations—situations C and D. In situation C, the State would find neither conviction available for enhancement, and we find both available. In situation D, the State would find both convictions available for enhancement, and we find only the most recent conviction available. But in the remaining situations, the interpretations are identical. The State's fear of our interpretation having a drastic narrowing effect on the law is unwarranted. For the most part, the results are no different.

### Legislative History

The State also argues that following the literal text of the statute is, in this case, counter to legislative intent. *Boykin* instructs us to follow the literal text if it is unambiguous and not absurd, and that is what we do in this case. There is no basis here for proceeding to extra-textual factors such as legislative intent.

Additionally, the State's argument regarding legislative intent is unpersuasive. This statute originated in House Bill 314, which stated that a conviction for intoxication manslaughter could be used to enhance under § 49.09(e) no matter when it occurred. Later, the House Criminal Jurisprudence committee issued a substitute version of the bill which added the language now found in § 49.09(e)(2). That bill never got beyond the House, but its substance was found in House Bill 2250. The introduced version of HB 2250 contained the language concerning involuntary manslaughter. When the bill went to the Senate, the Senate Criminal Justice committee presented a substitute version that added the language now found in § 49.09(e)(2).

But the final version of HB 2250 made an additional change, one that seems minor but actually had a tremendous effect on the law. That version changed what was the pre–2001 version of § 49.09(e)(2) into what is now § 49.09(e)(3). The previous version said:

the person has not been convicted of an offense under [any intoxication-related penal provision] committed within 10 years before the date on which the offense for which the person is being tried was committed.

The version created by the enrolled version of HB 2250 says:

the person has not been convicted of an offense under [any intoxication-related penal provision] within 10 years of the latest date under Subdivision (2).

The State concedes that this change is significant. The previous version measured the time between the date the prior offense was committed and the date that the current offense was committed. The amended version measures the time between the date of the conviction for the prior offense and the date listed under Subdivision (2). And subdivision (2) refers to the latest date for a previous conviction, not the current offense. So this portion of the statute now measures a completely different time period than it did before.

This change was made in what Senator Moncrief described during a public hearing as "a floor amendment that merely removes the duplicative language and makes appropriate technical clean-ups, but no substantive changes." He then described it on the House floor in the following manner: "merely a legislative council clean-up, removes duplicative language, makes no substantive changes to the bill." The problem is, as the State acknowledges, he was wrong. Regardless of what he or the Legislative Council intended, the amendment was substantive.

■ Where does that leave a court attempting to interpret a statute? The State argues that we should follow the Legislature's intent regardless of what it wrote. But we interpret the Legislature's statutes, not its intentions. We must give effect to the Legislature's change in the law regardless of whether the change was intended. As the Supreme Court reminded us earlier this year, "[i]f Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent. It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think ... is the preferred result." [11] The D.C. Circuit explains, "whatever degree of confidence about congressional purpose one derives from the legislative history, that purpose must find expression 'within the permissible limits of the language' before it can be given effect." [12]

In this case, it may have been the Legislature's intent to make merely technical, non-substantive changes in the floor amendment to HB 2250. Instead, it made substantive changes to the law, which we must consider in our interpretation of the statute.

### Conclusion

The plain language of § 49.09(e) is clear and it does not lead to an absurd result. We affirm the judgment of the Court of Appeals.

KELLER, P.J., and MEYERS, J., dissented without opinion.

COCHRAN, J., filed a dissenting opinion.

COCHRAN, J., filed a dissenting in which KELLER, P.J. and MEYERS, J., joined.

I respectfully dissent. "Our constitutional duty, of course, is to effectuate what

---

11. *Lamie v. United States Tr.*, 540 U.S. 526, 542, 124 S.Ct. 1023, 1034, 157 L.Ed.2d 1024 (2004) (internal quotations omitted).

12. *United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 495 (D.C.Cir.2004).

the Legislature intended when it enacted the statute."[1] It is beyond peradventure that the Texas Legislature did not intend to enact any dramatic substantive changes to the felony DWI enhancement statute in its 2001 amendment. The infelicitous language found in the amendment to section 49.09(e) of the Texas Penal Code is a drafting mistake and the result of a last-minute floor amendment which promised "no substantive change" in the law. The Texas Legislature can, and probably will, quickly repair its drafting error, but I think that we ought not apply a rigid "plain language" interpretation to statutory language that we know was not intended by the Legislature, created a statutory ambiguity, and is nothing more than a technical error.

In this case, the two jurisdictional enhancement paragraphs alleged prior DWI convictions in 1984 and 1997. The trial court overruled appellant's motions to dismiss or quash the indictment which asserted that the 1984 conviction was too remote to use because it occurred more than ten years before the present offense. The Twelfth Court of Appeals reversed, holding that the 2001 amendments to Section 49.09(e) limited the use of prior DWI convictions for enhancement purposes to those which occur within ten years of each other.[2]

We granted review to determine whether the court of appeals correctly interpreted the 2001 amendment.[3] Because I find that the plain language of amended section 49.09(e) is ambiguous, I would apply the usual statutory construction aids. I conclude that the relevant ten-year period is the time between the commission of the present or primary offense and the date of the defendant's discharge from probation, parole, or incarceration for the *most recent* prior DWI. Therefore, I would reverse the court of appeals and affirm the judgment of the trial court.

## I.

On May 23, 2002, appellant, Bobby Doyle Getts, was indicted for felony DWI. The indictment alleged that he had two prior convictions for DWI: one conviction on April 26, 1984, and another on September 11, 1997. Appellant filed motions to dismiss and to quash the indictment, arguing that the 1984 conviction could not be used for enhancement of the present DWI because it occurred outside the ten-year window set out in amended section 49.09(e). After the trial court denied the motions, appellant pleaded guilty to felony DWI and was sentenced to three years in prison.

The court of appeals reversed appellant's conviction after concluding that the

---

1. *Kutzner v. State*, 75 S.W.3d 427, 433 (Tex. Crim.App.2002); *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991) (beginning its discussion of statutory interpretation with this statement: "[w]hen we interpret statutes ... we seek to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation. We do so because our state constitution assigns the *lawmaking* function to the Legislature while assigning the law *interpreting* function to the Judiciary") (citations omitted, emphasis in original).

2. *Getts v. State*, 156 S.W.3d 594, 2003 WL 22456104,2003 Tex.App. LEXIS 9237 (Tex.

App.-Tyler, Oct 29, 2003) (No. 12–03–00047–CR), *reh'g overruled by* 2003 WL 22956392, 2003 Tex.App. LEXIS 10546 (Tex.App.-Tyler, Dec. 16, 2003) (not designated for publication).

3. We granted the State Prosecuting Attorney's sole question for review:

 Did the Court of Appeals correctly interpret the 2001 amendment to Penal Code § 49.09(e) such that the relevant ten-year period for an intervening conviction is now the period between the two prior DWI's rather than the ten-year period before the date of the primary offense?

use of the 1984 DWI conviction to enhance the present offense from a misdemeanor to a felony was improper.[4] The court of appeals concluded that the 2001 amendment to section 49.09(e) limits the use of prior DWIs for enhancement purposes by changing the relevant ten-year remoteness period from the former "ten years from the most recent prior offense to the date of the present offense" to "ten years between the most recent prior conviction and the date of the *earlier* prior conviction."[5] Because there was a greater than ten-year gap between appellant's most recent prior conviction in 1997 and his earlier prior conviction in 1984, the court of appeals reversed the trial court's judgment, ordered that the judgment be reformed to reflect a conviction for a class B misdemeanor, and remanded the case for a new punishment hearing.[6]

## II.

This case presents an issue of statutory interpretation of the Texas Legislature's 2001 amendment to the ten-year remoteness rule for felony DWI enhancement. Under our traditional rules of statutory interpretation, we must look to the plain meaning of the language used.[7] When the statutory language is "clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute."[8] However, when the plain language is ambiguous or its straightforward application would lead to absurd results, courts may consider extra-textual factors to arrive at a sensible interpretation.[9] Our overriding goal is to carry out the legislative intent of the law.[10]

### A. Historical Overview of DWI Enhancements

Although DWI is normally a misdemeanor offense, when a person has two prior DWI convictions, the third DWI charge may be elevated to a felony.[11] The public policy rationales for increased penalties for repeat DWI offenders include:

(1) repeat offenders should be punished more severely for repeatedly endangering the public welfare; (2) harsher penalties for repeat offenders function as a deterrent, discouraging the offender and others from drinking and driving; and (3) the jail sentence for repeat offenders ... reflects the need to physically remove drunk drivers from public streets for a period of time, both as punishment for them and as protection for the rest of society.[12]

4. *Getts,* at 596, 2003 WL 22456104, at *1, 2003 Tex.App. LEXIS 9237 at *3.

5. *See id.* at 595. The two set-off parallel phrases are not direct quotations from the court of appeals' opinion, but rather my rephrasing of language used by the court of appeals.

6. *Id.* at 596.

7. *See Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App.1991); *see also Badgett v. State,* 42 S.W.3d 136, 138 (Tex.Crim.App. 2001).

8. *Boykin,* 818 S.W.2d. at 785 (citations omitted).

9. *Id.* at 785–86. The appropriate extra-textual factors to consider are set out in Tex. Gov't Code § 311.023.

10. *Kutzner v. State,* 75 S.W.3d 427, 433 (Tex. Crim.App.2002).

11. Tex. Pen Code § 49.09 et. seq.; *see also Weaver v. State,* 87 S.W.3d 557, 560 (Tex. Crim.App.2002), *cert. denied,* 538 U.S. 911, 123 S.Ct. 1491, 155 L.Ed.2d 234 (2003).

12. *Guinn v. State,* 696 S.W.2d 436, 438 (Tex. App.-Houston [14th Dist.] 1985, pet. ref'd).

Historically, Texas law provided that any *one* prior driving while intoxicated conviction, no matter how remote,[13] could enhance a misdemeanor DWI offense to a felony.[14] In 1983, that requirement was increased to two prior DWI convictions.[15] Then, in 1993, the Legislature limited the elevation of a DWI to a felony only when the defendant had two prior DWI convictions, one of which had been committed within the ten-year period before the commission of the present offense.[16] Under the 1993 law, the ten-year remoteness clock began ticking backwards from the date of the present offense to the date the person committed his most recent prior DWI.[17]

## B. The 2001 Amendments to the DWI Enhancement Statute

In 2001, the Legislature made changes to three provisions within section 49.09. First, *any* prior intoxication manslaughter conviction, regardless of whether it involved the use of a car, airplane, or boat, can be used to elevate a misdemeanor DWI to a felony DWI offense.[18] Second, any intoxication manslaughter conviction, no matter how remote, can be used to enhance the present DWI offense.[19] Third, the Legislature amended Section 49.09(e), the provision we are now charged with interpreting, to "modif[y] the ten-year time period to begin after the individual's

**13.** *Joles v. State*, 563 S.W.2d 619, 622 (Tex. Crim.App.1978).

**14.** *See Rawlings v. State*, 602 S.W.2d 268, 270 (Tex.Crim.App.1980) (setting out enhancement provisions of art. 6701l–2, V.A.C.S. (subsequent offense driving while intoxicated)); *Edwards v. State*, 166 Tex.Crim. 301, 302, 313 S.W.2d 618, 619 (1958) (setting out enhancement provisions of art. 802(b) V.A.P.C. (subsequent offense driving while intoxicated)).

**15.** *See Guinn*, 696 S.W.2d at 437 (noting that the 1983 law "is more lenient than the prior DWI statute in that the prior law required elevation of a DWI offense to felony status after only *one* prior offense rather than *two* ") (emphasis in original). *See* Act of June 16, 1983, 68th Leg., R.S., ch. 303, § 3, 1983 Tex. Gen. Laws 1568, 1576 (former Tex.Rev.Civ. Stat. art. 6701l–1) (art. 6701l–1(e) stated: "If it is shown on the trial of an offense under this article that the person has previously been convicted two or more times of an offense under this article, the offense is punishable by: (1) a fine of not less than $500 or more than $2,000; and (2) confinement in jail for a term of not less than 30 days or more than two years or imprisonment in the state penitentiary for a term of not less than 60 days or more than five years"). That provision was repealed in 1993. *See* Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.15, 1993 Tex. Gen. Law 3586, 3704.

**16.** *See* Tex. Pen.Code § 49.09(e) (1993). The 1993 law recognized that people can rehabili-

tate themselves and that, after sowing wild oats as a youth, they may become stable, solid members of society. The legislative purpose of the limitation upon the DWI enhancement statute has remained the same since 1993. *See Bower v. State*, 77 S.W.3d 514, 517 (Tex. App.-Houston [1st Dist.] 2002, pet. ref'd) (noting that "[t]he obvious purpose of subsection (e) is to prevent the State from sending a person to prison for the offense of DWI when that person has not had any DWI convictions in the previous ten years").

**17.** The former version of Section 49.09(e) read:

A conviction may not be used for purposes of enhancement under this section if:
(1) the conviction was a final conviction under Subsection (d) and was for an offense committed more than ten years before the offense for which the person is being tried was committed; and
(2) the person has not been convicted of an offense under Section 49.04, 49.05, 49.06, 49.065, 49.07, or 49.08 or any offense related to operating a motor vehicle while intoxicated committed within ten years before the date on which the offense for which the person is being tried was committed.

Tex. Pen.Code § 49.09(e) (2000).

**18.** *See* Tex. Pen.Code § 49.09(f)(1) (2001).

**19.** *See* Tex Pen.Code § 49.09(f)(2) (2001).

sentence is completely discharged."[20] The first two amendments broaden the enhancement provisions considerably by allowing for the use of any prior intoxication manslaughter convictions for enhancement, regardless of type or remoteness. At issue in this case is whether the Legislature's change to section 49.09(e) broadened or drastically restricted the use of prior DWI convictions when there are two prior convictions rather than simply one.

## C. The *Boykin* Plain Language Analysis

In interpreting a statute under *Boykin*, we look first to the plain language used.[21] Amended section 49.09(e) states that a prior DWI conviction may not be used for enhancement if:

(1) the conviction was a final conviction under Subsection (d);

(2) the offense for which the person is being tried was committed more than 10 years after the latest of

(A) the date on which the judgment was entered for the previous conviction;

(B) the date on which the person was discharged from any period of community supervision on which the person was placed for the previous conviction;

(C) the date on which the person successfully completed any period of parole on which the person was released after serving a portion of the term to which the person was sentenced for the previous conviction; or

(D) the date on which the person completed serving any term for which the person was confined or imprisoned for the previous conviction; and

(3) the person has not been convicted of any offense . . . related to operating a motor vehicle while intoxicated within 10 years of the latest date under Subdivision (2).

Under Subsections (A)-(D), the Legislature unambiguously changed the time at which the prior conviction clock begins ticking. Formerly, it had been the date of the commission of the offense. Now, it is a much later date—whichever date is the latest of the date of judgment, termination of community supervision or parole, or release from jail or prison. That change clearly broadens the use of a single prior conviction because it moves forward—closer to the time of the present offense—the ten-year window.[22]

The difficulty in interpreting Subsection (e) is deciding how it applies when the defendant has *two* prior DWI convictions. Does the clock run backward (as it did under prior law and as it does for a single prior conviction) to the date that the most recent prior conviction sentence expires and, if that conviction is not remote, revitalize any other earlier conviction? Or does the clock, for purposes of two prior DWI convictions, now run forward to mea-

---

20. HOUSE COMM. ON CRIMINAL JURISPRUDENCE, BILL ANALYSIS, Tex. H.B. 314, 77th Leg., R.S. (2001).

21. *Boykin*, 818 S.W.2d at 785.

22. Suppose, for example, that a defendant is charged with a DWI alleged to have occurred on November 1, 2004. He has a prior conviction for a DWI which was committed on November 1, 1990. Under the pre–2001 amendment, that prior conviction is too remote to use as an enhancement. But under the 2001 amendments, if the defendant was not sentenced for that 1990 DWI until November 10, 1992, and then served two years on community supervision which terminated on November 9, 1994, that prior conviction can be used to enhance the present offense.

sure only the ten-year interval between the first and second prior conviction?

The court of appeals said that the clock now runs forward from the earliest prior conviction. It reasoned:

> Appellant's 1984 conviction for DWI meets each of the requirements for remoteness because 1) the conviction was a final conviction, 2) the 2002 DWI offense was committed more than ten years after the 1984 date of conviction for DWI, and 3) the 1997 DWI conviction did not occur within ten years of the 1984 conviction.[23]

Several other courts of appeals have followed the reasoning of the Tyler Court of Appeals. They have stated that, under the pre–2001 amendments, "the proper approach was to 'look back' ten years from the date of the primary DWI offense to determine whether an intervening DWI conviction had occurred since the remote conviction."[24] After the 2001 amendments, however, these courts reason that they are required to "look forward" from the earliest of the prior convictions to see if there is an intervening conviction within ten years of that earliest conviction.[25] Viewed in a vacuum, this is a reasonable reading of the literal words of the statute.

However, I think that the plain language of this statute is ambiguous under *Boykin* because there are at least three other reasonable interpretations of the plain language in the amended statute.[26] First, as suggested during oral argument on this case, the statute could be read to mean that the two prior DWIs *both* had to be within ten years of the present offense before they could be used for felony enhancement purposes.[27] Second, the amended statute could be read to require "chaining" of prior convictions—the sentence on each prior DWI conviction used to enhance must have been completed within ten years of the next one. Third, as Professors Dix and Dawson read the amended statute, it could mean that "if the State proves two prior DWI convictions and the date of either conviction is not more than ten years before the commission of the primary offense," the State may elevate the offense to a felony.[28]

**23.** *Getts,* at ——, 2003 WL 22456104, at *2, 2003 Tex.App. LEXIS 9237 at * 5.

**24.** *Uriega v. State,* 136 S.W.3d 258, 260 (Tex. App.-San Antonio 2004, no pet.); *see also Howard v. State,* 137 S.W.3d 282, 287–88 (Tex.App.-Fort Worth 2004, no pet.); *Anderson v. State,* 110 S.W.3d 98, 99 (Tex. App.-Dallas 2003, no pet.).

**25.** *Uriega,* 136 S.W.3d at 261 (stating that amended section 49.09(e) "prohibits the use of a prior DWI conviction if the defendant committed the charged DWI more than ten years after the judgment date of the prior DWI and if the defendant was not convicted of another intoxication related offense within that ten-year period"); *Anderson,* 110 S.W.3d at 99.

**26.** *See Boykin,* 818 S.W.2d 782.

**27.** Tr. Oral Argument (September 29, 2004). This interpretation had been accepted by one court under the pre–2001 enhancement statute, *see Renshaw v. State,* 981 S.W.2d 464, 466 (Tex.App.-Texarkana 1998, pet. ref'd), but the Texarkana court later stated that it erred in *Renshaw. See Smith v. State,* 1 S.W.3d 261, 263 (Tex.App.-Texarkana 1999, pet. ref'd) (concluding that "[t]he statute requires the State to prove only one prior D.W.I. conviction in the ten-year period and one other prior D.W.I. conviction, not subject to the ten-year limiting period"); *see also Bower,* 77 S.W.3d at 516–17 (holding that, under art. 49.09(e), only one of the prior convictions must be within ten years of the present offense).

**28.** *See* 43 GEORGE W. DIX AND ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 38.128 at 204 (2004 Pocket Part). Professors Dix and Dawson state:

> In 2001, the legislature totally changed the nature of the remoteness ban. Instead of measuring the time between the commis-

## D. Extra-textual Considerations and Legislative Intent

Because each one of these four "plain language" interpretations is plausible, I believe that the statute is ambiguous under *Boykin*.[29] Therefore, I would look to extra-textual considerations to determine the intent of the Legislature.[30] The Code Construction Act, which provides the tools for interpretation when the plain language of a law is ambiguous,[31] states that, in construing a statute, a court may consider the

(1) object sought to be attained;

(2) circumstances under which the statute was enacted;

(3) legislative history;

(4) common law or former statutory provisions, including laws on the same or similar subjects;

(5) consequences of a particular construction;

(6) administrative construction of the statute; and

(7) title (caption), preamble, and emergency provisions.[32]

I would apply the first two factors—the object to be attained and the circumstances under which the statute was enacted—together because of their similarity in this instance. The 2001 Legislature's first two amendments to Section 49.09 show the expansion of offenses (any and all prior intoxication manslaughter convictions regardless of remoteness) and the broadening of the time-window triggering the enhancement of the charged DWI offense (increasing it from the date of the commission of the prior offense to the latest date for which any sentence would affect the defendant). Additionally, the circumstances under which the 2001 amendments were enacted further support the legislative intent to broaden the scope of eligible offenses used for enhancement purposes. The Bill Analysis of HB 314 clarifies the background and purpose of the 2001 amendments in stating:

> Under current law, if an individual is convicted of a third DWI within ten years of the date the previous offense was committed the offense is increased to a third degree felony offense. However, the ten-year period begins with the individual's incarceration and could be partially or completely executed during the individual's confinement. House Bill 314 modifies the ten-year time period to begin after the individual's sentence is completely discharged and authorizes a previous conviction of intoxication manslaughter to be used for the purposes of enhancement regardless of when the conviction occurred.[33]

Thus, the amendment's stated purpose was to broaden the scope of DWI convictions that could be used for enhancement purposes.

Further, the legislative history of the 2001 amendment also reflects a broadening

---

sion of the primary DWI offense and the date of commission of the latest prior DWI, the amended provision measures the time from the commission of the primary DWI offense to the date the defendant was discharged from probation, parole or incarceration for the newest of the prior offenses. *Id.* As they further note, "[o]f course, this substantially extends the reach of the felony DWI statute to include more offenses." *Id.*

29. *Boykin*, 818 S.W.2d at 785.

30. *See id.; see also Ex parte Kuester*, 21 S.W.3d 264, 268 (Tex.Crim.App.2000).

31. *See Brown v. State*, 943 S.W.2d 35, 38 (Tex.Crim.App.1997).

32. Tex. Gov't Code § 311.023.

33. House Comm. On Criminal Jurisprudence, Bill Analysis, Tex. H.B. 314, 77th Leg., R.S. (2001).

purpose. The original version of HB 2250 (the bill that eventually created the amendment to 49.09(e)) addressed only intoxication manslaughter.[34] However, HB 2250 was amended by the addition of language from HB 314, discussed above, which modified the ten-year rule and was the basis for the present version of 49.09(e).[35] The current language-interpretation dilemma was created by a floor amendment to HB 2250 by Senator Moncrief. Senator Moncrief's introduction of HB 2250 stated that the proposed amendment was a way of closing loop-holes in the previous DWI enhancement statute. He explained:

> Members, this bill closes some of the loop-holes in the DWI statutes, to ensure that repeat DWI offenders face appropriate charges. It provides that a person convicted of intoxication manslaughter—that is, someone who kills someone driving drunk—that any subsequent DWI would be a felony. It also states DWI penalty enhancements apply for *up to ten years after the completion of the sentence for previous convictions.*[36]

In further explaining the purpose of the floor amendment to HB 2250, Senator Moncrief stated:

> Mr. President, this is merely a Legislative Council clean-up amendment of language that was added on the House floor. The House added new language without removing the old statute, and this [current floor amendment] removes duplicative language to avoid confusion within the statute. *It makes no substantive change to the bill.*[37]

Senator Moncrief's floor amendment indicates that the amendment did not make any substantive changes to HB 2250, but rather, made the language in subsection(e)(3) congruent with the changes made to subsection (e)(2). Under this change, subsections (e)(2) and (e)(3) provide that the relevant time period is that looking backward from the commission of the present offense to the latest date under the revised Subsection(e)(2) (i.e., the date of the conviction, or the date of the release from probation, parole, or confinement) of the most recent prior conviction. Thus, the legislative history indicates that the 2001 amendment was not intended to radically limit the scope of eligible prior DWIs used for enhancement purposes, but rather to broaden that scope.

There is no indication from any source that the Legislature intended the type of radical revision and limitation of the DWI felony enhancement statute that would occur under the interpretation given by the majority, the court of appeals, or by the first two alternate "plain language" possibilities—both prior DWIs within the single ten-year window before the commission of the charged offense or "chaining" of DWIs with each prior within ten years of the one before it. The interpretation given by the majority and court of appeals in this case has an additional deleterious effect: it unduly emphasizes the sins of one's youth without regard for more recent reformation because two very remote DWIs would permit enhancement to a felony as long as both of those prior DWI convictions oc-

34. *See* House Research Organization, Tex. H.B. 2250, 77th Leg. (2001).

35. House Comm. On Criminal Jurisprudence, Bill Analysis, Tex. H.B. 314, 77th Leg., R.S. (2001).

36. *See* http//www.senate.state.tx.us/ram/archive/May2001/ 052102Session—A.ram. May 21, 2001, Senate Session, Part 1. (emphasis added).

37. *Id.* (emphasis added).

curred within a ten-year window.[38]

I cannot agree that the majority's interpretation accords with the legislative intent or with the other two simultaneous amendments to section 49.09 which significantly broaden the use of intoxication manslaughter convictions to enhance a DWI offense to a felony. I think that the legislature intended to broaden, not drastically limit, the use of prior DWI convictions for enhancement purposes.[39]

Furthermore, under the literal "plain meaning" of the words, no conviction obtained before September 1, 1994, is barred for enhancement purposes under the statute. As the State aptly points out, under section 49.09(e)(1), the ten-year rule prohibits the use of a prior DWI *only* if "the conviction was a final conviction under Subsection (d)."[40] Subsection (d), however, refers only to convictions occurring on or after September 1, 1994.[41] Therefore, under a purely technical application of the "plain meaning" rule, no conviction—regardless of how remote—obtained before that date is barred from use under subsection (e). Now, of course, that is not at all

what the legislature intended. The clear intent of subsection (d) is to include within the definition of "final conviction" any conviction obtained after September 1, 1994, whose sentence was probated as well as those in which the sentence was "imposed." But that is not what the literal words of the statute say. If we are to adhere to the "plain meaning" of the literal words in one subsection of article 49.09, we should, for the sake of consistency, adhere to the technical "plain meaning" in the other pertinent subsection of article 49.09. But in neither subsection would strict application of the literal words of the statute be a reasonable interpretation of the law or one that is in accord with legislative intent.

In sum, I would find that the most reasonable interpretation of the 2001 amendments is that of Professors Dix and Dawson. That interpretation is also most faithful to the legislative intent and history. Although the language of the 2001 amendment to the statute is infelicitous, I believe that the relevant ten-year period under section 49.09(e) is the time from the

---

**38.** As the State Prosecuting Attorney points out, under this interpretation, a teenager could have two DWI convictions in the halcyon days of his youth, then lead an exemplary life for the next forty years, and, celebrating his sixtieth birthday, commit a new offense. He could be charged with a felony DWI. On the other hand, the town drunk who finishes each of his five prior DWI sentences exactly eleven years apart, except for the most recent one which was just two years before the present offense, could not be charged with a felony.

**39.** The majority quotes the Supreme Court's recent statement that, "[i]f Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent. It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think ... is the preferred result." *Lamie v. United States Tr.*, 540 U.S. 526, 542, 124 S.Ct.

1023, 157 L.Ed.2d 1024 (2004). But in *Lamie*, the Supreme Court had, in fact, looked to the conflicting and competing legislative history as support for its application of a technical "plain meaning" interpretation of the pertinent bankruptcy statute, in part because there was no clear and unambiguous legislative intent. *Id.* ("[t]hese uncertainties illustrate the difficulty of relying on legislative history *here* and the advantage of our determination to rest our holding on the statutory text") (emphasis added).

**40.** Tex. Penal Code § 49.09(e)(1).

**41.** Tex. Penal Code § 49.09(d) reads: "For the purpose of this section, a conviction for an offense under Section 49.04, 49.05, 49.06, 49.065, 49.07, or 49.08 that occurs on or after September 1, 1994, is a final conviction, whether the sentence for the conviction is imposed or probated."

commission of the present DWI offense backwards to the date on which the defendant was discharged from probation, parole, or confinement for the most recent prior offense. If that conviction was discharged within ten years of the present offense, it revitalizes any other earlier DWI conviction—regardless of the date it was committed—for enhancement purposes.

I would reverse the decision by the court of appeals and affirm the judgment of the trial court.

<u>Appendix</u>

| Prior convictions | State's view | Our view |
|---|---|---|
| A. Discharge date of one prior conviction within 10 years of current offense; other prior conviction also within 10 years of current offense; both prior convictions within 10 years of one another | Both prior convictions available for enhancement | Both prior convictions available for enhancement |
| B. Discharge date of one prior conviction within 10 years of current offense; other prior conviction more than 10 years before current offense; both prior convictions within 10 years of one another | Both available for enhancement; the more recent makes the older one available | Both available for enhancement; the less-than-10-years between two makes older one available |
| C. Discharge date of one prior conviction more than 10 years before current offense; other prior conviction also more than 10 years before current offense; both prior convictions within 10 years of one another | Neither available; nothing within 10 years of current offense | Both available for enhancement; the less-than-10-years between two makes both available |
| D. Discharge date of one prior conviction within 10 years of current offense; other prior conviction more than 10 years before current offense; prior convictions more than 10 years apart | Both available for enhancement; the more recent makes the older one available | Recent conviction available, older one not |
| E. Discharge date of one prior conviction more than 10 years before current offense; other prior conviction also more than 10 years before current offense; prior convictions more than 10 years apart | Neither available; nothing within 10 years of current offense | Neither available; over 10 years between both convictions |